(Not for Publication)                                        (Docket Entry No. 14)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                        :
MELANIA PAVLIK,                      :
                                                        :
                      Plaintiff,         :    Civil No. 06-3015 (RBK)
                                                        :
                   v.                      :    **OPINION**
                                                        :
JOHN E. POTTER, POSTMASTER     :
GENERAL UNITED STATES POSTAL   :
SERVICE,                                             :
                                                        :
                   Defendant.        :
_____:

**KUGLER**, United States District Judge:

      Presently before the Court is a motion by Defendant John E. Potter, Postmaster General of the United States Postal Service ("Defendant") for summary judgment against Plaintiff Melania Pavlik ("Plaintiff" or "Pavlik"). Plaintiff claims that she was discriminated against on the basis of disability and in retaliation for prior EEO activity in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"). For the reasons below, Defendant's motion will be granted as to all of Plaintiff's claims covered in her first, second and fifth EEO complaints. With respect to the remaining claims, Defendant's motion will be granted as to Plaintiff's disability discrimination claim and denied as to Plaintiff's retaliation claim.

1

**I. BACKGROUND**

Plaintiff has been a clerk at the Processing and Distribution Center in Bellmawr, New Jersey since 1983. Plaintiff is a level 5 employee and is at the top of her level as a clerk. Plaintiff filed the instant complaint on July 5, 2006, claiming that she suffered discrimination on the basis of her disabilities (hypertension, diabetes, depression and anxiety) and in retaliation for her EEO activities. Plaintiff has filed six complaints with the EEOC. In her brief, Plaintiff has clarified that the complaint in this matter covers only the allegations in her third, fourth, and sixth EEO complaints. (Pl.'s Br. at 2.)

**A. Plaintiff's First EEO Complaint (1-C-081-0052-02)**

On September 19, 2002, Plaintiff filed her first formal EEO complaint, alleging that her co-worker, Faye Margaret McGinnis ("McGinnis"), harassed her in May and June of 2002. (Def.'s Ex. E, EEO Complaint of Discrimination.) According to Plaintiff, she and McGinnis were both working on the small parcel bundle sorter ("sorter")[1] on May 30, 2002. Plaintiff claims that McGinnis left the machine and her mail was falling on the floor. Plaintiff reported McGinnis' behavior to her supervisor. Later the same day, Plaintiff claims that she and McGinnis had a verbal dispute. Plaintiff alleges that McGinnis screamed at her and then ridiculed her because she was shaking and her face was red. Plaintiff reported this incident to her supervisor and asked to have her seat changed so that she would not be next to McGinnis. The supervisor complied with this request. (Pavlik Dep. at 75-79.)

On June 13, 2002, plaintiff requested pre-complaint counseling with regard to the May

---

[1] The sorter is a large machine where nine clerks work in rotations of three. Clerks did not have fixed seats, but rather rotated according to a schedule. (Def.'s Statement of Undisputed Material Facts at ¶ 4; Pl.'s Response to Def.'s Statement of Undisputed Material Facts at ¶ 4.)

30, 2002 incident as well as other incidents of alleged harassment that occurred on May 31, June 1, and June 6, 2002. (Def.'s Ex. D, Information for Pre-Complaint Counseling.)

After Plaintiff's dispute with McGinnis on May 30, Plaintiff was scheduled to work on the opposite side of the sorter from McGinnis until August 8, 2002.  On August 8, Plaintiff was assigned to work on the same side of the sorter as McGinnis.  (Pavlik Dep. at 92.)  She informed her supervisor that she did not want to sit near McGinnis, and she was assigned to another area. (Pavlik Dep. at 97-98.)   Seeing that she was scheduled to work with McGinnis had upset Plaintiff, who went to the medical room.  (Pavlik Dep. at 100.)  She took sick leave for several days, and then returned to speak with Manager of Distribution Operations ("MDO") Robert Steelman, who granted her request to change her schedule so that she would not work at the same time as McGinnis. (Pavlik Dep. at 105.)  Plaintiff saw her doctor on August 26, 2002 because of her stress problems, and her doctor gave her a note for her supervisor stating that she was not to work with people who upset her. (Pavlik Dep. at 109.)

Plaintiff attended a mediation conference with MDO Richard Weissmann and McGinnis on August 20, 2002 (Def.'s Ex. H, Investigative File, at 92.)  Plaintiff claims that at this meeting, Weissmann said that she could go to municipal court for fighting with McGinnis.  (Pavlik Dep. at 114-115.)

On September 19, 2002, Plaintiff filed a formal EEO complaint, alleging that McGinnis had harassed her.  (Def.'s Ex. E, EEO Complaint.)  On October 23, 2002, this complaint was dismissed for failure to state a claim because Plaintiff did not identify the basis of the alleged discrimination.  (Def.'s Ex. F, Dismissal of Formal EEO Complaint.)

### B. Plaintiff's Second EEO Complaint (1-C-081-0012-03)

Plaintiff filed her second formal EEO complaint on November 18, 2002, claiming discrimination on the basis of disability and in retaliation for prior EEO activity. Plaintiff's second EEO complaint was based on incidents that took place on October 5 and October 18, 2002. (Def.'s Ex. H, Investigative File, at 83, 87.)

In September 2002, Kim McKeever became Plaintiff's supervisor. (Pavlik Dep. at 121.) Plaintiff met with McKeever on three occasions in late September and early October. In the first meeting, McKeever asked Plaintiff if she would accept another assignment (other than working on the sorter) at the same pay rate. Plaintiff said she would not. (Pavlik Dep. at 122-25.) At the second meeting, on September 24, Plaintiff, believing that some of her coworkers were upset by her special arrangment, offered to work somewhere other than on the sorter on the one day a week that she was scheduled to work with McGinnis. (Pavlik Dep. at 127-28.) Plaintiff claims that McGinnis continued to harass her, so she decided to work at the sorter again. (Pavlik Dep. at 129-31). On October 1, 2002, Plaintiff asked McKeever to reassign her to the sorter. (Pavlik Dep. at 131.) On October 5, McKeever told Pavlick that if she returned to work on the sorter, she would be placed in the normal seating rotation, where she could be on the same side of the sorter as McGinnis; Plaintiff was also given the option of working on one of two other assignments, where she would not see McGinnis. (Pavlik Dep. at 138, 141-43.) Plaintiff claims that on October 18 she was forced off her bid job, and had to work on another assignment, because the supervisor refused to change the seating arrangement to keep her away from McGinnis. (Pavlik Dep. at 145-47.)

On September 25, 2003, the parties attended a mediation with respect to Plaintiff's

4

second EEO complaint, and reached a settlement. (Def.'s Ex. I, Settlement Agreement.)

### C. Third and Fourth EEO Complaints (1-C-081-0020-03 and 1-C-081-0040-03)

Plaintiff filed her third EEO complaint on December 18, 2002. On May 27, 2003, Plaintiff amended the complaint and filed a fourth complaint. The third and fourth complaints were consolidated, and 1C-081-0040-03 was closed. The following incidents gave rise to the third and fourth complaints: (1) on November 6, 2002, Plaintiff's supervisor assigned her to work with McGinnis, despite having been notified that Plaintiff could not work near McGinnis; (2) on November 9, 2002, a co-worker told Plaintiff that her supervisor said that Postal Inspectors were coming to the area because people were talking about Plaintiff; (3) On November 12, 2002, Plaintiff heard another employee talking about the supervisor's November 9th comment; (4) beginning on April 12, 2003, Plaintiff's supervisor assigned her to work with coworkers who aggravated her medical conditions[2]; and (5) on May 16, 2003, Plaintiff was issued a letter of warning. (Def.'s Statement of Undisputed Material Facts at ¶ 29.[3])

Plaintiff claims that on November 6, 2002, McKeever asked her to work with McGinnis and Mary Stratton, another co-worker with whom Plaintiff did not get along. When Plaintiff objected, her assignment was changed. (Pavlik Dep. at 148-49.)

Plaintiff claims that on April 12, 2003, McKeever allowed a pregnant co-worker to change her seating assignment to avoid lifting the heavy mail, but would not allow Plaintiff to change her seat to avoid McGinnis. (Pavlik Dep. at 168-69.) Plaintiff also claims that an

---

[2] These incidents took place on April 12, April 24, and May 3. (Complaint at ¶¶ 34, 35, 37.)

[3] Plaintiff agrees with this description of her complaint. (Pl.'s Response to Def.'s Statement of Undisputed Material Facts at ¶ 29.)

employee with fibromyalgia was not required to participate in the seating rotation. (Pavlik Dep. at 170-71.)

On May 16, 2003, Plaintiff received a letter of warning based on an incident that occurred on May 3. (Def.'s Ex. J at 1; Pavlik Dep. at 188.) On May 3, 2003, the sorter was shorthanded. McKeever asked McGinnis, who had just started a new assignment, to help on the sorter. According to Plaintiff, McGinnis sat in Plaintiff's seat, which caused Plaintiff's blood pressure to rise. Plaintiff called McKeever "spiteful"[4] and said she had to go home because she was sick. (Pavlik Dep. at 180-87.)

**D. Fifth EEO Complaint (1C-081-0071-03)**

Plaintiff requested pre-complaint counseling, but never filed a formal complaint, with respect to the following allegations: (1) on May 27, 2003, Plaintiff requested that an attendance letter be removed from her personnel file and her supervisor told her that she could not have proof that the letter was pulled; (2) on two occasions when Plaintiff was late for work, her time card was not in the rack and was allegedly hidden by her supervisor; (3) the supervisor stopped making the work schedule available for employees to see; and (4) Plaintiff was denied "v-time"[5] and overtime on certain occasions. (Def.'s Statement of Undisputed Material Facts ¶¶ 40, 43.[6])

---

[4] According to McKeever, Plaintiff screamed at her and called her a "spiteful bitch." Plaintiff denies cursing and raising her voice. (Pavlik Dep. at 187-88.)

[5] "V-time" is double time that applies if a person works over eight hours on an overtime day. (Pavlik Dep. at 203.)

[6] Plaintiff agrees with Defendant's description of her allegations and admits that she never filed a formal complaint with regard to these allegations. (Pl.'s Response to Def.'s Statement of Undisputed Material Facts at ¶¶ 40, 43.)

**E. Sixth EEO Complaint (1C-081-0057-04)**

On June 26, 2005, Plaintiff filed a formal complaint which contained the following allegations: (1) On September 8, 2004, while Plaintiff was out on sick leave, she received a letter indicating that all positions on the sorter were being eliminated and that she must submit paperwork for a new bid by September 10, 2004; and (2) Plaintiff was not allowed to keep her position on the sorter until she was assigned to a new position, while other workers were permitted to keep working on the sorter until reassigned. (Def.'s Ex. Q, Investigative Report, at 4.)

Plaintiff was on extended sick leave from approximately April 2004 until January 2005. (Pavlik Dep. at 231-32.) According to MDO Weissmann, all notifications of the job abolishment and vacancy were prepared and given to the secretary on the same day – September 1, 2004. (Def.'s Ex. R, Weissmann Affidavit, at 2, 3.) Further, according to Weissmann, notifications were hand delivered to employees at work and mailed to employees who were absent or on leave. (Id. at 3.) Despite having only two days to select a new assignment, Plaintiff was able to submit her bid on time and received her second choice for a new assignment. (Pavlik Dep. at 246.)

**II. STANDARD**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed,

and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. DISCUSSION

Defendant's first argument in support of his motion for summary judgment is that all claims set forth in Plaintiff's first, second, and fifth EEO complaints are untimely and should be dismissed on this basis. In her brief, Plaintiff states that the complaint in this matter covers only her third, fourth, and sixth EEO complaints. Therefore, to the extent that Plaintiff's complaint originally stated claims addressed her first, second, and fifth EEO complaints, Defendant's motion for summary judgment is granted as to these claims.

With respect to the incidents described in the EEO complaints at issue, Defendant argues he is entitled to summary judgment on Plaintiff's claims of disability discrimination and

retaliation. Because the Court finds that Plaintiff has not created a genuine issue of material fact as to whether she is disabled within the meaning of the Rehabilitation Act, Defendant's motion for summary judgment will be granted as to Plaintiff's claim of disability discrimination. However, because the Court finds that there are genuine issues of material fact with respect to Plaintiff's retaliation claim, Defendant's motion will be denied as to this claim.

### A. Disability Discrimination

Plaintiff claims that Defendant discriminated against her on the basis of her disabilities, in violation of the Rehabilitation Act. The Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a) (2006). The standards for determining liability under the Rehabilitation Act are the same as the standards under the Americans with Disabilities Act. McDonald v. Com. of Pa., Dept. of Public Welfare, Polk Center, 62 F.3d 92, 95 (3d Cir. 1995). Under either statute, the plaintiff must establish a prima facie case by showing the following:

> (1) he is a disabled person within the meaning of the ADA [or Rehabilitation Act]; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.

Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998). One way in which an employer can discriminate against an individual with a disability is by failing to make reasonable accommodations to the disabilities of the employee, unless such accommodation would impose an undue hardship on the employer. Id. at 579. If the plaintiff's case is based on the employer's

failure to provide a reasonable accommodation, the plaintiff must also show, as part of her prima facie case, that her proposed accommodation is reasonable. Id. An employer is entitled to summary judgment if it proves that the plaintiff is unable to show a genuine issue of material fact as to "one or more elements of the plaintiff's prima facie case." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997).

Here, Defendant challenges Plaintiff's ability to establish a prima facie case of disability discrimination. Defendant argues that Plaintiff is not disabled for purposes of the Rehabilitation Act. Under the Act, an individual with a disability is defined as a person who

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;
> (ii) has a record of such an impairment; or
> (iii) is regarded as having such an impairment.

29 U.S.C. § 705(20)(B). It is not sufficient for a plaintiff merely to prove that she has a physical or mental impairment. See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195 (2002). The plaintiff must show that the impairment substantially limits a major life activity, an activity "of central importance to daily life." Id. at 197. Such activities include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii)(2007). If the substantial life activity that the plaintiff claims is substantially limited is working, the plaintiff must show that she is "unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999).

Plaintiff claims that she is disabled because she suffers from hypertension, depression, diabetes and anxiety. She claims that these conditions have substantially limited her ability to work in a broad range of jobs. However, Plaintiff concedes that she "is not alleging that she was

unable to care for herself . . . or that she had problems with seeing, hearing, speaking, breathing or any of the multitude of major life activities." (Pl.'s Br. at 16.)  Plaintiff argues that "if her condition was exacerbated she would be unable to work." (Id.)  Furthermore, she states that she was able to work if she was not seated on the same side of the sorter as McGinnis. (Pl.'s Br. at 17-18.)  The note that Plaintiff's doctor provided stated that Plaintiff must stay away from people who cause her stress. (Pl.'s Ex. C.)

      Plaintiff's evidence is insufficient to create a genuine issue of material fact as to whether she has an impairment that substantially limits a major life activity and thus is disabled for purposes of the Rehabilitation Act.  A person is not substantially limited in her ability to work merely because she is unable to work with certain individuals.  See Siemon v. AT&T Corp., 117 F.3d 1173, 1176 (10th Cir. 1997); Weiler v. Household Finance Corp., 101 F.3d 519, 524 (7th Cir. 1996); see also Gaul, 134 F.3d at 580 n.3 ("[W]e strongly suspect that a plaintiff who is unable to work with individuals who cause him 'prolonged and inordinate stress' cannot be said to be incapable of performing a 'class of jobs or a broad range of jobs in various classes.'" (quoting Weiler, 101 F.3d at 524)).

      Plaintiff, having failed to create a genuine issue of material fact as to whether she has an impairment that substantially limits a major life activity, has also failed to create a genuine issue of material fact as to whether she had a record of or was regarded as having such an impairment. While plaintiff has a record of numerous medical conditions, she does not have a record of conditions that substantially limit a major life activity.  As discussed above, Plaintiff does not claim that her hypertension, diabetes, depression and anxiety prevent her from working, but only that they prevent her from working with McGinnis.  Furthermore, while Plaintiff may have been

regarded as suffering from a number of medical conditions, she has not presented evidence that Defendant believed she suffered from an impairment that substantially limited her ability to perform any major life activity, including working.

Because Plaintiff has failed to demonstrate a genuine issue of material fact as to whether she is a disabled person within the meaning of the Rehabilitation Act, Defendant's motion for summary judgment will be granted as to Plaintiff's claim of disability discrimination.

**B. Retaliation**

Plaintiff also claims that Defendant retaliated against her because of her prior EEO activity. Retaliation claims are governed by the McDonnell Douglas burden shifting scheme. Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006). First, a plaintiff must establish a prima facie case by demonstrating that: "(1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action." Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001). Furthermore, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation omitted).

If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to provide a legitimate non-discriminatory reason for its actions. Moore, 461 F.3d at 342. If the employer articulates a legitimate non-discriminatory reason, the plaintiff, in order to prevail, must prove that the reason offered by the defendant is false and that retaliation was the

actual reason for the adverse employment action.  Id.  To defeat an employer's motion for summary judgment, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994) (citation and quotation omitted).

In this case, Plaintiff engaged in a protected employee activity by filing a number of EEO complaints.  However, Defendant claims that Plaintiff cannot establish a prima facie case because she cannot establish that Defendant took any adverse employment action or that there was a causal link between Plaintiff's EEO activity and Defendant's alleged adverse employment actions.  Defendant further claims that even if Plaintiff can establish a prima facie case, Defendant has presented legitimate, non-discriminatory reasons for its actions, and Plaintiff has not created a genuine issue of material fact as to the veracity of the proffered explanations.

### 1. Adverse Employment Action

Plaintiff claims that Defendant retaliated against her in numerous ways, but because Plaintiff has stated that her complaint is limited to the issues raised in her third, fourth and sixth EEO complaints, the Court will focus on those alleged instances of retaliation.  The Court finds that some of the actions Plaintiff lists could be materially adverse.

A number of incidents that the plaintiff claims were adverse employment actions were not materially adverse.  First, the November 6, 2002 and April 24, 2003 incidents, described in Plaintiff's third and fourth EEO complaint, in which Plaintiff was asked to work near McGinnis, were not materially adverse.  As soon as Plaintiff informed her supervisor that she could not work with McGinnis, she was told she did not have to, and in fact did not work on the same side

of the machine as McGinnis on these days.  Second, the November 9 and 12 incidents, in which Plaintiff heard that her supervisor had told a co-worker that Postal Inspectors were going to come to the area because of Plaintiff's complaints and then heard that this comment had been repeated, were not materially adverse.  Third, Defendant's alleged failure to give Plaintiff sufficient notice of the elimination of her position on the sorter, part of Plaintiff's sixth EEO complaint, is not materially adverse.  Plaintiff claims that she had only two days to respond to the notice by choosing a new position.  However, Plaintiff has not shown how any delay in sending her the notice adversely affected her, given that she was able to submit her bid for a new position on time and received her second choice for a new assignment.

  While the above incidents were not materially adverse, a few incidents cited by Plaintiff might dissuade a reasonable worker from filing a complaint.  The April 12, 2003 incident, in which Plaintiff contends that a co-worker was permitted to change her seat assignment, while Plaintiff was not, could be a materially adverse employment action.  The denial of privileges given to other employees may be materially adverse.  Furthermore, given Plaintiff's circumstances, the May 3, 2003 incident, in which McGinnis was asked to work on the sorter and sat in Plaintiff's seat, could be materially adverse.  Plaintiff claims that she was sickened by this action, and had to go home.  In addition, the May 16, 2003 letter of reprimand may be materially adverse.  The Court will not hold that as a matter of law that such a letter would not dissuade a reasonable worker from filing a complaint.  Finally, Plaintiff's allegation that she was not allowed to continue working on the sorter while waiting to begin her new assignment, while other employees were permitted to do so, may be an adverse employment action.

### 2. Causation

Defendant claims that Plaintiff has offered no proof of a causal connection between her EEO complaints and the allegedly adverse employment actions. Temporal proximity between the protected activity and the adverse employment action may indicate causation for purposes of a plaintiff's prima facie case. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). However, for timing alone to be sufficient, the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive." Krouse, 126 F.3d at 503 (citation omitted). If the timing is not unusually suggestive of retaliatory motive, the plaintiff must show some other evidence of retaliatory motivation. Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 760 (3d Cir. 2004). Here, the allegedly adverse employment actions all took place after Plaintiff had begun filing EEO complaints against Defendant, but the timing is not unusually suggestive of retaliatory motivation. However, Plaintiff testified at her deposition that two other employees who requested special seating assignments were accommodated, while she was not. This evidence that Plaintiff was treated differently than other employees who requested special seating arrangements is sufficient to satisfy Plaintiff's burden of creating a genuine issue of material fact as to the causation element of her prima facie case.

### 3. Legitimate Non-Discriminatory Reason and Pretext

Defendant claims that it has a legitimate non-discriminatory reason for all of the alleged adverse employment actions and that Plaintiff has not created a genuine issue of material fact as to whether Defendant's proffered reasons are pretext for retaliation.

With regard to Plaintiff's claim that McGinnis was asked to work on the sorter on May 3, Plaintiff admits that the reason McGinnis was asked to work on the sorter at that time was

because there were several empty seats at the sorter. (Pavlik Dep. at 180-81.) Plaintiff has not offered any evidence to show that Defendant's explanation for assigning McGinnis to work at the sorter with Plaintiff on May 3 was false and that the real reason for the assignment was to retaliate against Plaintiff.

With regard to the May 16, 2003 letter of reprimand, Defendant claims that the reason for this letter was that Plaintiff yelled at her supervisor and created a disturbance in the workplace. In her deposition, Plaintiff denied raising her voice and cursing, but admitted that she confronted her supervisor and called her "spiteful" after she saw McGinnis sitting in her seat. Plaintiff has presented some evidence tending to indicate that her behavior did not warrant a letter of reprimand, thus casting doubt on Defendant's proffered explanation.

In response to Plaintiff's claim that she was not permitted to change her seat on April 13, while a co-worker, Michelle Budniak, was allowed to do so, Defendant states that Plaintiff was given multiple accommodations and that Budniak was permitted to change her seat because she was pregnant and could not throw heavy mail. Plaintiff concedes that the reason Budniak was permitted to change her seat was her pregnancy. (Pavlik Dep. at 168-69.) However, Plaintiff claims that if the seating rotation could be changed to address Budniak's medical condition, it could also have been changed to address her medical condition. Furthermore, while Plaintiff's request to sit on the opposite side of the sorter from McGinnis was honored at first, by April 12, Plaintiff was no longer guaranteed that she would not have to sit on the same side of the sorter as McGinnis. In sum, the Court finds that Defendant's proffered reason does not adequately explain why McGinnis was treated differently than another employee with medical concerns.

In response to Plaintiff's claim that other employees whose positions were eliminated

16

were permitted to continue working on the sorter, while Plaintiff was not, Defendant states that some employees were temporarily assigned to other sorter machines based on seniority. (Def.'s Ex. R, Weissman Affidavit, at 5.) At the time the temporary assignments were made, Plaintiff was on sick leave. Plaintiff admits that the members of her sorter crew received only temporary assignments on other sorters, and that she was out on leave at the time the assignments were made. (Pavlik Dep. at 248.) Plaintiff has not presented evidence to challenge Defendant's explanation of the temporary assignments.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted as to all claims addressed in Plaintiff's first, second and fifth EEO complaints, granted as to Plaintiff's claim of disability discrimination, and denied as to Plaintiff's claim of retaliation.


Dated:   10-27-08                                          /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge